**Justina FIGUEROA, A/K/A Justina Figueroa Echevarria, et al., Plaintiffs, Appellants,**

v.

**Miguel RIVERA, A/K/A Miguel Rivera Garcia, et al., Defendants, Appellees.**

No.  97–2252.

United States Court of Appeals, First Circuit.

Submitted June 5, 1998.

July 20, 1998.

Maria H. Sandoval and Judith Berkan on brief for appellants.

Arturo Aponte Pares on brief for appellee Gervacio Rivera Robles.

Carlos Lugo Fiol, Solicitor General, Puerto Rico Dep't of Justice, Edda Serrano Blasini, Deputy Solicitor General, and Sigfredo Rodriguez Isaac, Assistant Solicitor General, on brief for remaining appellees.

Before SELYA, Circuit Judge,
ROSENN * and CAMPBELL, Senior Circuit Judges.

SELYA, Circuit Judge.

Appellants, the heirs of Jesús Ríos Quiñones (Ríos), allege that local plenipotentiaries conspired to convict Ríos for a murder that he did not commit and that a different set of public officials failed to provide Ríos with adequate medical care during his incarceration (leading to his premature death). The district court dismissed the complaint, and the plaintiffs appeal. We affirm (though our reasoning diverges at times from that of the lower court).

* Of the Third Circuit, sitting by designation.

## I. BACKGROUND

If recited here in full flower, the averments in the complaint would seem to have been lifted from the pages of a John Grisham thriller. Our tale, however, is decidedly less gripping, as many of the more sensational allegations are irrelevant to the issues on appeal. We limit our narrative accordingly. *See Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, F.S.B.*, 958 F.2d 15, 16 (1st Cir. 1992).

In 1984, a jury convicted Ríos, David Carrión Ramos (Carrión), and Rafael Méndez Kercadó (Méndez) of first degree murder in connection with the slaying of José Treviño. The Puerto Rico Supreme Court rejected the trio's appeals. The three men subsequently sought a new trial in the nisi prius court, alleging that they had unearthed previously undiscovered evidence which proved their innocence. According to their proffer, this evidence indicated that four other persons murdered Treviño, and that the prosecutor, Miguel Rivera García (Rivera), endeavored to frame Ríos, Carrión, and Méndez because Rivera's nephew was one of the guilty parties. After a hearing, the presiding judge found the new evidence unpersuasive and denied the defendants' motion. No appeal was taken.

Carrión next sought habeas corpus relief in the federal district court pursuant to 28 U.S.C. § 2254 (1994 & Supp. II 1996), and Ríos followed suit.[1] After the cases languished for nearly four years, Carrión and Ríos filed amended petitions, representing that they had located a brand-new witness who could provide proof of their innocence. Since the two had not presented this evidence to the trial court, the respondents promptly moved to dismiss the amended habeas petitions on exhaustion grounds. *See Adelson v. DiPaola*, 131 F.3d 259, 261–62 (1st Cir.1997) (discussing the exhaustion requirement in federal habeas jurisprudence). Before the district court could rule on these motions, Ríos died in custody. Upon learn-

1. Méndez (who suffered from terminal cancer) received a gubernatorial pardon. He is now deceased.

ing of Ríos's death, the district court (Laffitte, J.) dismissed his petition as moot. Some months later, Judge Laffitte dismissed Carrión's petition, without prejudice, for want of exhaustion.

On April 9, 1996, various members of Ríos's family brought suit in the district court against Rivera, Rivera's former supervisor, several Puerto Rico police officers, and one of Treviño's "actual" murderers. Invoking 42 U.S.C. § 1983 (1994), they averred that these defendants had succeeded in framing Ríos for Treviño's murder, thereby spawning an unconstitutional conviction and sentence. The plaintiffs added a bevy of pendent tort claims stemming from Ríos's conviction and consequent incarceration. These claims sounded in negligence, malicious prosecution, abuse of process, false arrest, and intentional infliction of emotional distress. Finally, the plaintiffs asserted claims for negligence and deprivation of civil rights against several "John Doe" defendants, never more specifically identified, who allegedly acted carelessly and with deliberate indifference to Ríos's need for medical care during his immurement.

The appellees moved to jettison the complaint for failure to state any claim upon which relief could be granted or, in the alternative, for summary judgment. *See* Fed. R.Civ.P. 12(b)(6), 56. The district court (Casellas, J.) determined that *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), barred the action and dismissed the complaint.[2] *See Figueroa Echevarria v. Rivera Garcia*, 977 F.Supp. 112, 116 (D.P.R.1997). This appeal ensued.

## II. ANALYSIS

▨ We afford plenary review to a district court's grant of a motion for dismissal under Fed.R.Civ.P. 12(b)(6). *See McCoy v. Massachusetts Inst. of Tech.*, 950 F.2d 13, 15 (1st Cir.1991). In the course of this oversight, we accept well-pleaded facts as true and draw all reasonable inferences from those facts in favor of the plaintiff. *See Massachusetts Sch. of Law at Andover, Inc.*

*v. American Bar Ass'n*, 142 F.3d 26, 40 (1st Cir.1998). Dismissal is appropriate "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir. 1990).

### A

▨ The appellants' main section 1983 claim hinges on the assertion that Rios's conviction and subsequent imprisonment were unconstitutional. In their complaint, they allege that the police officers who investigated Treviño's slaying and the prosecutor who tried the case spun a web of lies to ensure Ríos's conviction, and, in the bargain, coerced witnesses to prevaricate and shielded the actual killers. To make matters worse, the complaint alleges, Rivera and his cohorts then undertook a pattern of deceit to conceal their lawlessness.

Assuming, purely for argument's sake, that the appellants could prove these assertions, we nonetheless must uphold the district court's disposition. The *Heck* Court ruled in no uncertain terms that when a section 1983 claimant seeks "to recover damages for allegedly unconstitutional conviction or imprisonment," he "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486–87, 114 S.Ct. 2364. In the absence of such a showing of impugnment, the claim "is not cognizable under [section] 1983." *Id.* at 487, 114 S.Ct. 2364. Here, the appellants do not allege that an authorized tribunal or executive body overturned or otherwise invalidated Ríos's conviction. Consequently, *Heck* bars the unconstitutional conviction and imprisonment claims. *See, e.g., White v. Gittens*, 121 F.3d 803, 806–07 (1st Cir.1997); *Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir.1996).

▨ The appellants counter that strict application of *Heck* works a fundamental unfairness in this case. After all, Ríos was attempting to impugn his conviction when

---

2. In light of this ruling, the district court did not address the defendants' alternative motions for summary judgment. *See Figueroa Echevarria v.*

*Rivera Garcia*, 977 F.Supp. 112, 114 (D.P.R. 1997).

death intervened. Although · this plaint strikes a responsive chord, it runs afoul of *Heck*'s core holding: that annulment of the underlying conviction is an element of a section 1983 "unconstitutional conviction" claim. *See* 512 U.S. at 487, 114 S.Ct. 2364. Creating an equitable exception to this tenet not only would fly in the teeth of *Heck*, but also would contravene the settled rule that a section 1983 claimant bears the burden of proving all the essential elements of her cause of action.[3] *See Ruggiero v. Krzeminski*, 928 F.2d 558, 562–63 (2d Cir.1991).

## B

Although the district court reached the correct result with respect to the unconstitutional conviction and imprisonment claims, it dismissed the appellants' action without prejudice, *suggesting in dictum that if Carrión ultimately succeeds in reversing his conviction*, then the appellants "might be able to ... bring this [section] 1983 action." *Figueroa Echevarria*, 977 F.Supp. at 116. The appellees denigrate this aspect of the court's ruling, contending that *Heck*, on its face, requires a section 1983 claimant who seeks damages arising out of an unconstitutional conviction to show reversal of his own—not a codefendant's—conviction, and that, therefore, the district court should have dismissed the appellants' claims with prejudice.

■ We are skeptical that a section 1983 claimant can satisfy the *Heck* regimen by arguing a theory of reversal by proxy. That said, however, we decline to grapple with the appellees' argument. A party who neglects to file a cross-appeal may not use his opponent's appeal as a vehicle for attacking a final judgment in an effort to diminish the appealing party's rights thereunder. *See Morley Constr. Co. v. Maryland Cas. Co.*, 300 U.S. 185, 191, 57 S.Ct. 325, 81 L.Ed. 593 (1937); *Gonzalez v. Bowie*, 123 F.2d 387, 389 (1st Cir.1941). Because the appellees did not prosecute a cross-appeal, the argument that they seek to advance is not properly before us.

## C

■ In a curious gambit designed to skirt the obstacles that *Heck* interposes, the appellants asseverate that Judge Laffitte improperly terminated Ríos's and Carrión's habeas petitions in 1996 and 1997, respectively, and that this court erroneously dismissed an appeal from the latter order. The short answer to this line of argument is that the appellants did not raise these contentions below, and they are thus foreclosed from unveiling them for the first time on appeal. *See Teamsters, Chauffeurs, Warehousemen and Helpers Union, Local No. 59 v. Superline Transp. Co.*, 953 F.2d 17, 21 (1st Cir. 1992); *McCoy*, 950 F.2d at 22.

■ The slightly longer, but equally dispositive, answer is that the appellants' gambit amounts to an attempt to collapse the habeas proceedings into their section 1983 action, thereby creating a legal chimera through which they seek simultaneously to invalidate Ríos's conviction and to recover damages. *Heck* forecloses this type of hybridization and makes the impugning of an allegedly unconstitutional conviction *in a separate, antecedent proceeding* a prerequisite to a resultant section 1983 action for damages. *See Heck*, 512 U.S. at 486–87, 114 S.Ct. 2364. The exclusive method of challenging an allegedly unconstitutional state conviction in the lower federal courts is by means of a habeas corpus action, *see Preiser v. Rodriguez*, 411 U.S. 475, 488–90, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), and, correlatively, "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Heck*, 512 U.S. at 486, 114 S.Ct. 2364.

■ In all events, the appellants lack standing to press the habeas argument. Although a state prisoner need not always pursue a habeas petition in person, *see* 28 U.S.C. § 2242 (1994) (stipulating that "someone act-

---

**3.** We are mindful that dicta from concurring and dissenting opinions in a recently decided case, *Spencer v. Kemna*, —— U.S. ——, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998), may cast doubt upon the universality of *Heck*'s "favorable termination" requirement. *See id.* at ——, 118 S.Ct. at 989 (Souter, J., concurring); *id.* at ——, 118 S.Ct. at 990 (Ginsburg, J., concurring); *id.* at —— n. 8, 118 S.Ct. at 992 n. 8 (Stevens, J., dissenting). The Court, however, has admonished the lower federal courts to follow its directly applicable precedent, even if that precedent appears weakened by pronouncements in its subsequent decisions, and to leave to the Court "the prerogative of overruling its own decisions." *Agostini v. Felton*, —— U.S. ——, ——, 117 S.Ct. 1997, 2017, 138 L.Ed.2d 391 (1997); *see also Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). We obey this admonition.

ing on [the state prisoner's] behalf" may seek the writ), "next friend" habeas petitions are rare. To bring such a petition, the filing party must show both that she is proceeding in the prisoner's behalf and that there is a valid reason why she is better situated than the prisoner to pursue the writ. *See Whitmore v. Arkansas*, 495 U.S. 149, 163–64, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990).

Whether or not the appellants could satisfy this two-part test with respect to Ríos is an academic question. Ríos's death during the pendency of his habeas petition rendered that action moot, and no earthly circumstance can revive it. *See Knapp v. Baker*, 509 F.2d 922, 922–23 (5th Cir.1975); *Hann v. Hawk*, 205 F.2d 839, 840 (8th Cir.1953); *United States ex rel. Schwartz v. Lennox*, 320 F.Supp. 754, 755 (E.D.Pa.1971). As to Carrión's habeas petition, the appellants plainly cannot meet the requirements for proceeding vicariously. First, they seek to reinstate the petition to serve their own interests in maintaining a section 1983 action; any benefit to Carrión would be purely coincidental. Second, there is absolutely no indication in the record that Carrión is incapable of pursuing a new habeas petition once he has exhausted his state remedies. *See* 1 James S. Liebman & Randy Hertz, *Federal Habeas Corpus Practice and Procedure* § 8.3c, at 218–19 (2d ed.1994) (cataloging the various incapacities of a prisoner that federal courts have deemed sufficient to justify a "next friend" petition).

For these reasons, then, the appellants' belated collateral attack on a collateral attack to a state conviction is doomed to failure.

### D

■ Judge Casellas held that the appellants' failure to satisfy the *Heck* prerequisites swept the board, and he dismissed the entirety of their complaint. *See Figueroa Echevarria*, 977 F.Supp. at 116 & n. 13. This ruling is rock-solid insofar as it relates to the unconstitutional conviction and imprisonment claims under section 1983. In other respects, the ruling is more problematic.

■ The appellants' secondary section 1983 claim does not challenge the "fact or length of [Ríos's] confinement." *Heck*, 512 U.S. at 482, 114 S.Ct. 2364. Rather, the appellants charge that unnamed agents of the government's Medical Services Administration acted with deliberate indifference to Ríos's need for medical care while in prison, and that this Eighth Amendment violation led to his demise. *See Estelle v. Gamble*, 429 U.S. 97, 104–05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (explaining that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under [section] 1983"). *Heck* does not require a section 1983 plaintiff who challenges the conditions of his confinement, as opposed to the fact or length of his confinement, to demonstrate that his conviction has been impugned. *See Heck*, 512 U.S. at 487, 114 S.Ct. 2364. Such claims may go forward under section 1983, even if the plaintiff's complaint includes a separate, *Heck*-barred cause of action. *See Brown v. Plaut*, 131 F.3d 163, 167–68 (D.C.Cir.1997), *cert. denied*, — U.S. —, 118 S.Ct. 2346, 141 L.Ed.2d 716 (1998); *Channer v. Mitchell*, 43 F.3d 786, 788 (2d Cir.1994) (per curiam). We therefore conclude that the district court erred when it dismissed the appellants' deliberate indifference claim on the basis of *Heck*.

■ In the final analysis, however, this error is harmless because the dismissal of the deliberate indifference claim is supportable on an alternate ground. The complaint does not accuse Rivera or any other named defendant of deliberate indifference to medical needs,[4] but levels this charge against various "John Doe" defendants. In the seventeen months that elapsed between the filing of the complaint and the entry of judgment, the record discloses no attempt by the appellants to identify or serve any of the

---

4. To the extent, if at all, that paragraph 61 of the complaint can be read to charge the named defendants with deliberate indifference to medical needs, that legal conclusion is free-floating. The complaint alleges no facts, either direct or inferential, that would suggest anything beyond the following scenario: Ríos died while in a Puerto Rico prison under the care of government employees and, therefore, the named defendants are liable for his death. This allegation, if made

at all, is nothing more than a bald assertion, not sufficient to survive a motion to dismiss. *See Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996). We add, at the expense of carting coal to Newcastle, that the appellants briefed their deliberate indifference to medical needs claim "in the most skeletal way," and thus in all events have waived it. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990).

anonymous defendants allegedly responsible for Ríos's deficient medical treatment. Under Fed.R.Civ.P. 4(m), a district court may dismiss a complaint without prejudice as to a particular defendant if the plaintiff fails to serve that defendant within 120 days after filing the complaint. Moreover, a district court otherwise prepared to act on dispositive motions is not obligated to "wait indefinitely for [the plaintiff] to take steps to identify and serve ... unknown defendants." *Glaros v. Perse,* 628 F.2d 679, 685 (1st Cir. 1980) (internal quotation marks omitted). We think that seventeen months is a more than ample interlude, and we therefore uphold the district court's "without prejudice" dismissal of the deliberate indifference claim on this alternative ground.

▇ In a similar vein, we affirm the district court's dismissal of the appellants' pendent Puerto Rico law claims, but rest our holding on a basis somewhat different from that envisioned by the lower court. The appellants premise federal jurisdiction on the section 1983 claims. *See* 28 U.S.C. § 1331 (1994) (conferring jurisdiction for actions that "aris[e] under" federal law). Because the district court dismissed those claims at an early stage, it was fully authorized to dismiss all pendent causes of action without prejudice. *See Martinez v. Colon,* 54 F.3d 980, 990 (1st Cir.1995). The appellants are, of course, free to pursue those causes of action in the courts of Puerto Rico. *See id.* at 990–91 & n. 12.

## III. CONCLUSION

We need go no further. Factually, this is a troubling case. The appellants' allegations, if true, cry out for remediation. But the appellants have proceeded down the wrong path in their quest for justice. Settled principles of law require that we affirm the judgment below, remitting the appellants to other, non-federal remedies.

*Affirmed.*